JOHN D. HEARN, ET AL., *v.* COVINGTON CITY COUNCIL.

**Mandamus—Discretion of City Council.**

> Where the general assembly, by an act, provided that the city of Covington might submit the question to a vote of the citizens, as to whether the city would issue its bonds in a sum not exceeding $800,-000 to construct a bridge across the Ohio, and after a majority of the votes were cast in the affirmative the city council ascertained that the bridge would cost largely more than the sum named, and that the consent of the state of Ohio had not been secured to erect such bridge, the council has the right in the use of its discretion to refuse to let such contract, and to issue the bonds.

APPEAL FROM KENTON CHANCERY COURT.

November 15, 1878.

OPINION BY JUDGE PRYOR:

At the start of the institution of this suit for a mandamus against the council of the city of Covington, there had been no money expended, so far as this record shows, in the constrction of a bridge across the Ohio river, or any liability whatever incurred by the city on account of the contemplated improvement. A majority of the votes polled at an election held in the city favored some legislation that would authorize the construction of the improvement, and expenditure of $800,000 for that purpose, the money to be raised by the issuance and sale of the bonds of the city. Application was made to the legislature of the state, and a law enacted investing the city with the power to contract for the construction of the bridge through the agencies and in the manner designated by the act. The city council was required to submit the question to the voters of the city as to their willingness to assume the payment of an annual tax, to meet the interest on the bonds to be issued, and to constitute a sinking fund for the payment of the principal debt. The act reciting

"When the election shall be ordered and notice thereof given by the city council at such time and in such mode as the council shall direct, and upon a majority favoring the tax, the bonds shall be issued and sold and the tax levied and collected." Trustees were required to issue and sell the bonds, who were to be appointed for that and other purposes by the judges of the Kenton circuit and county courts and the mayor of the city. The city council undertook to carry out the provisions of the law by passing an ordinance designating the time and place for an election, and calling on the voters to express themselves for or against the levy of the tax.

This ordinance was afterwards repealed, and the present appellants, believing that the city council was not acting in good faith, asked that they be compelled to order the election as required by the enactment. The reasons given by the council for its action are: 1st. They had ascertained by a committee appointed for that purpose that the structure contemplated would cost one million five hundred thousand dollars, instead of eight hundred thousand; 2d. No legislation had been obtained from the state of Ohio authorizing the construction of the bridge or any part of it within the limits of that state. 3d. The city was then indebted about one million of dollars, and the interest was being paid by the levy of an annual tax, and to increase the burden would be oppressive on the citizens.

It seems that the site for the bridge had neither been selected or obtained, and the expenditure necessary to its completion not made the subject of inquiry until the vote for a levy of the tax was about to be polled. No preliminary step was taken to secure this large expenditure of money, in completing an improvement deemed of so much importance to the city of Covington; and it is now demanded as a matter of right that the council shall place the city in a condition, where its bonds can be issued for $800,000 and placed on the market, when it is evident that the assumption of such a heavy burden is but the beginning of the expenditure for such an improvement. The location of the bridge has not been fixed—the right of property secured for the purpose or the consent of the state of Ohio obtained to its construction.

It is insisted by appellants that the council has no discretion with reference to the vote upon the question, and the legislative will having been consulted both as to the means necessary to construct the bridge, and the benefits to be derived from it, there is no alternative left but to place the city in a condition to make the expenditure.

The legislature was only asked to invest the city with the power to construct the improvement through its properly constituted agencies at a cost not exceeding eight hundred thousand dollars; and to adjudge that these having control of the financial interests of the city are divested of âll discretion. and must expend the money or take such steps as will enable others to expend it, although insufficient to complete the structure, would be a disregard of the plain meaning and object of the law. Every statute should be construed according to its meaning, and the intention of the lawmakers followed with reason. The legislature never designed that the city council should take any step by which the bonds of the city amounting to $800,000 could be issued to build the bridge, when it was made apparent to the council that the expenditure would be useless unless the burden was increased to twice the amount in order to its completion. The mere authority to contract did not take from the city legislature all discretion over the subject. The interest now annually paid by the city is not less than seventy thousand dollars, and to have doubled this tax in the way of interest, to say nothing of the increase of the principal debt, would not only have been onerous, but resulted in levying a tax for no purpose, unless the principal. sum for constructing the bridge could have been increased to one and a half million of dollars. The city council had the right to decline to act under the law. The judgment below is therefore *affirmed*.

*Charles T. Eginton, W. W. Cleary, for appellants.*
*Steveson & O'Hara, for appellees.*